# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CYNTHIA RENEA PARIS,** )<br>)<br>**Plaintiff,** )<br>) <br> v. )<br>)<br>**ANDREW M. SAUL,** )<br>**COMMISSIONER OF SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>**Defendant.** ) | Case No. 2:20-00030<br>Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 20. Plaintiff has filed an accompanying Memorandum. Docket No. 21. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 22.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on April 4, 2017,

1

alleging that she had been disabled since September 1, 2013, due to post traumatic stress disorder, episodic mood disorder, anxiety, L5-S1 moderate to sever[e] bilateral foraminal encroachment, severe bilateral carpal tunnel syndrome, menorrhagia, dysfunctional uterine bleeding, endometriosis of uterus, enlarged uterus, cyst of ovaries, pain in pelvis, fibromyalgia, muscle spasms, bulging discs in L2-L3-L4 stenosis, L4-L5 hyperopathy, mild-moderate bilateral encroachment, modular spurring, fluid in right hip, and pelvic cyst lesions. *See, e.g.,* Docket No. 16 ("TR"), pp. 80-81, 96. Plaintiff's application was denied both initially (TR 96) and upon reconsideration (TR 116). Plaintiff subsequently requested (TR 130-31) and received (TR 37-79) a hearing. Plaintiff's hearing was conducted on December 13, 2018, by Administrative Law Judge ("ALJ") Todd Spangler. TR 38. Plaintiff and vocational expert ("VE"), Dr. J.D. Flynn, appeared and testified. *Id*.

On March 14, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13-27. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2018.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2013 through her date last insured of June 30, 2018 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, fibromyalgia, history of ovarian cyst with menorrhagia and endometriosis, obesity, asthma, anxiety disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and depressive mood disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or

2

medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk as well as sit for 6 hours each in an 8-hour workday. The claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, gases, poor ventilation, etc. She could perform simple and low-level detailed tasks with no more than occasional contact with coworkers, supervisors, and the public. Changes must be introduced gradually and infrequently. The claimant could do no more than one hour of continuous standing or walking.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 20, 1972 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 1, 2013, the alleged onset date, through June 30, 2018, the date last

>     insured (20 CFR 404.1520(g)).

TR 15-27.

On March 29, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 183-86. On April 1, 2020, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S.

4

197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1)

objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

6

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the

7

claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that: (1) The ALJ failed to properly consider Plaintiff's subjective allegations related to her fibromyalgia when determining her physical residual functional capacity, and (2) The ALJ erred in finding Plaintiff's carpal tunnel syndrome non-severe. Docket No. 21, p. 10-14.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### 1. Evaluation of Plaintiff's Subjective Allegations Related to Her Fibromyalgia

Plaintiff contends that in finding that her subjective complaints were not fully credible,

the ALJ did not appropriately address her complaints of pain. Docket No. 21, p. 10. Plaintiff argues that the ALJ's evaluation of her allegations of diffuse pain and fatigue related to her fibromyalgia is insufficient because the ALJ "did not consider any relevant factors," and instead focused on "objective evidence concerning [Plaintiff's] MRIs and x-rays," which is "irrelevant to her diffuse pain and fatigue due to fibromyalgia, which does not cause abnormalities in any of these body systems." *Id.* at 13-14.

Defendant responds that "in evaluating Plaintiff's RFC and subjective allegations, the ALJ properly considered the medical opinions." Docket No. 22, p. 6.

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

9

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), *construing* 20 C.F.R. § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." TR 20. Specifically, regarding Plaintiff's fibromyalgia, the ALJ articulated that:

> Regarding fibromyalgia, Dr. Kanagasegar, MD diagnosed fibromyalgia in 2017 (53F). She tested positive at 12 of 18 tender points. The doctor prescribed Topamax twice daily. In October 2016, treatment notes say a former rheumatologist, Dr. Pabolu, ruled out rheumatoid arthritis in the past (15F/12).
>
> Regarding fibromyalgia, the claimant testified that she has seen a couple of rheumatologists about her condition. She said fibromyalgia gives her "brain fog". She said she gets it "real bad, real bad". She forgets things. She will get chills easily, and a couple of times per day, she must sit in [a] tub of warm water. Her arm and thigh muscles are particularly bad; they are always twinging or hurting. She has tried several different medications, but she only

10

tolerates low dose Lyrica. However, Lyrica makes her tired. The Lyrica dulls the symptoms, but it does not take them away. She also takes muscle relaxers because the pain is constant. Medication dulls it but makes her sleepy. At least three times per week, she will go back to bed after getting up and getting dressed. When she gets out of bed, she is so stiff that it takes hours to work it out.

The claimant saw a rheumatologist in August 2018 (46F). Upon examination, there was no active synovitis. There were diffuse soft tissue tender points. Muscle strength was normal in upper and lower extremities. Diagnostic assessments were fibromyalgia and degenerative arthritis of lumbar spine with bulging disc. The rheumatologist noted the claimant did not like Cymbalta or gabapentin in the past, and she could only tolerate a low dose of Lyrica. The rheumatologist recommended warm water aerobics and Tai Chi.

When testifying about fibromyalgia, the claimant mentioned her lower back and hip joints as the major areas of stiffness. This might suggest a musculoskeletal origin, not necessarily fibromyalgia. It is quite difficult to extricate the symptoms of fibromyalgia from the symptoms due to musculoskeletal origin. The residual functional capacity herein accounts for all medically determinable impairments.

. . .

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the longitudinal record as a whole. The claimant has described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to drive a vehicle, handle finances, prepare simple meals, do laundry, and shop for groceries (Exhibit 3E).

It appears the claimant took care of two young children for about two years from 2016 to 2018 (40F). Treatment notes in May 2018 state the claimant had increased depression because she recently lost custody of the two children (both under the age of 10) that she had fostered over the past two years. The children went back to their parent. Taking care of two small children in the home requires a significant capacity for performing physical and mental work-related activities on a sustained basis.

In May 2018, the claimant sought medical treatment for a scratch

11

from a cat (39F). At the office visit, the claimant reported a wide range of activities of daily living. The claimant was able to take medication, feed herself, bathe herself, and groom and dress herself. She could do housekeeping, basic shopping, cooking, and making financial decisions. She said she had unimpaired vision.

The claimant testified at the hearing that lifting and carrying a gallon of milk is always a problem. Walking and standing for thirty minutes is difficult without something to lean on. She has difficulty bending over and squatting. To the extent alleged, these subjective allegations do not find support in the medical evidence (such as the gait discrepancies at the consultative examination with Dr. Leveck), her activities of daily living (Exhibit 3E and 39F), or the longitudinal record as a whole.

At the hearing, the claimant said she has good days and bad days. Regarding her allegation of good days and bad days, at the consultative examination with Dr. Leveck in July 2017 (26F), the claimant described her lower back pain as "constant". Moreover, at the consultative psychological examination with Dr. James, the claimant frankly stated that she does not have good days or bad days—all days are about the same (27F). This is inconsistent with reports of good days and bad days. These types of inconsistent statements about symptoms raise questions about the accuracy of the claimant's subjective reports of symptoms and limitations.

TR 22-24.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk,* 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ

is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F. 3d at 531, *citing Bradley,* 682 F. 2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." TR 20.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. ALJ's Evaluation Regarding Plaintiff's Carpal Tunnel Syndrome

Plaintiff argues that the ALJ erred in finding her carpal tunnel syndrome non-severe. Docket No. 21, p. 14. Plaintiff points to an EMG test from 2016 that showed severe bilateral carpal tunnel syndrome and Dr. Leveck's opinion regarding her impaired fine motor function to argue that the ALJ should have found her carpal tunnel syndrome to be severe. *Id.* Plaintiff also contends that a finding that her carpal tunnel syndrome is severe would be significant because

13

the Vocational Expert testified that there would be no work if Plaintiff were limited in her fine and gross manipulation. *Id.*

Defendant responds that the ALJ properly considered the EMG test along with all other relevant evidence and found Plaintiff's treatment inconsistent with a severe impairment. Docket No. 22, p. 10. Defendant additionally asserts that the RFC accounts for the carpal tunnel impairment—and thus was properly considered by the ALJ in his evaluation, despite the fact that he found the impairment to be non-severe. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F. 2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F. 2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F. 2d 240, 244 (6th Cir. 1987).

The ALJ in the case at bar found that Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, history of ovarian cyst with menorrhagia and

14

endometriosis, obesity, asthma, anxiety disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and depressive mood disorder. TR 15. After explicitly finding at step two that Plaintiff had an impairment or combination of impairments that was severe, the ALJ continued his evaluation of the evidence and completed the sequential evaluation process. *See* TR 15-18. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's failure to find Plaintiff's carpal tunnel syndrome to also be severe simply cannot constitute reversible error. *See Maziarz*, 837 F. 2d at 244 (6th Cir. 1987). Accordingly, Plaintiff's argument on this point fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**